UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KENNETH W. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-00141 |
| | ) | Judge Sharp |
| CITY OF CLARKSVILLE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

After a three day trial, a jury returned a verdict in favor of Defendant City of Clarksville on Plaintiff Kenneth Moore's claim that he was terminated from his employment as a police officer in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-301 *et seq.* Now pending before the Court is Defendant's Motion for Costs and Attorney's Fees (Docket No. 133), as well as Plaintiff's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial (Docket No. 137). The Motions have been briefed by the parties (Docket Nos. 134, 136, 138, 141 & 142), and will be denied, except to the extent that Defendant seeks costs pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.

## I. DISCUSSION

### A. Defendant's Motion for Costs and Attorney's Fees

#### 1. Costs

Rule 54(d) provides that, unless the law requires otherwise, "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Section 1920 of Title 28 enumerates the expenses that a federal court may tax as a cost under Rule 54(d).

1

Despite recognizing that costs are generally allowed to the prevailing party, Plaintiff argues Defendant is not entitled to costs for two reasons: this was a "close case," and "Rule 54 has no application to costs in a Title VII case, given 42 U.S.C. § 2000e-5(k)[.]." (Docket No. 135 at 3).

With regard to his first reason for denying costs, Plaintiff relies upon White & White, Inc. v. Am. Hosp. Supply Corp., 786 F.2d 728 (6th Cir. 1986). There, the Sixth Circuit noted that "Rule 54(d) establishes a norm of action: prevailing parties are entitled to their costs as a matter of course," but affirmed the district court's denial of costs in a "case involving complex issues requiring protracted litigation. Indeed, the matter consumed 80 trial days, required 43 witnesses, produced 800 exhibits, generated almost 15,000 pages of transcript, and begat a 95 page opinion." Id. 731 & 732.

This case, which involves a typical claim of retaliation is not, by any stretch, on a par with the difficulty and complexity of the legal and factual issues in White. See, Hunter v. Gen'l Motors Corp., 161 Fed. Appx. 502, 503-04 (6th Cir. 2005) (finding trial judge abused discretion in denying costs based on White in an "altogether straightforward" discrimination case); Pion v. Liberty Dairy Co., 922 F.Supp. 48, 51 (W.D. Mich. 1996) (White did not warrant denial of costs in a case involving a "relatively straightforward claim of sex discrimination.").

Nor does 42 U.S.C. § 2000e5(k) render the provisions of Rule 54(d) or 28 U.S.C. § 1920 inapplicable to Title VII cases. Plaintiff claims that Section 2000e5(k) "expressly governs the payment of costs and fees awarded to a prevailing party in a Title VII action," (Docket No. 135 at 3), but that is an overstatement because that section merely provides that the "court, in its discretion,

2

may allow the prevailing party, . . . a reasonable attorney's fee"[1]: it does not specifically bar an award of costs under either Rule 54(d) or Section 1920.

"The Supreme Court has held that Title VII cabins courts' discretion to award attorneys' fees to prevailing defendants, but the Court has not held the same with regard to costs." Keeshan v. Eau Claire Coop. Health Ctrs., Inc., 394 Fed. Appx. 997, 998 (4th Cir. 2010). While good faith will generally preclude an award of attorney's fees against a losing plaintiff, "[m]ost circuits . . . have rejected the argument that an unsuccessful Title VII plaintiff's good faith in bringing the suit will likewise shield h[im] from being taxed with h[is] opponent's costs." Id. (collecting case). Thus, in Goostree v. State of Tennessee, 796 F.2d 854, 864 (6th Cir. 1986), a case involving claims under Title VII and 42 U.S.C. § 1983, the Sixth Circuit overruled the district court's refusal to award costs to the prevailing defendant on the grounds that plaintiff's claims were not frivolous and, in doing so, observed that "[t]he prevailing party in a civil rights action . . . is in the same position as any other prevailing party with respect to costs available pursuant to 28 U.S.C. § 1920."

Based upon the foregoing, the Court determines that Defendant is entitled to an award of costs. However, Defendant will be required to submit its bill of costs to the Clerk of the Court and the determination of costs will thereafter be made in accordance with the provisions of Local Rule 54.01.

### 2. Attorney's Fees

---

[1]The statute provides:
> Attorney's fee; liability of Commission and United States for costs
> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k).

In Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412 (1978), the Supreme Court held that a prevailing defendant in a Title VII case should be awarded attorney's fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation," so as not to discourage civil rights plaintiffs or "undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." Id. at 421-22. Thus, "[a] 'plaintiff should not be assessed his opponent's attorney fees unless the court finds the claim was groundless at the outset, or 'that the plaintiff continued to litigate after it clearly became so.'" Wilson-Simmons v. Lake County Sheriff's Dept., 207 F.3d 818, 823 (6th Cir. 2000) (citation omitted).[2]

In this case, even though "Defendant is aware an award of attorney's fees for a prevailing defendant against a plaintiff is considered an 'extreme sanction,'" Defendant insists that it is entitled to such an award based upon the following arguments:

> Throughout this litigation, the Plaintiff attempted to expand the scope of his claims. He initially filed his Complaint alleging retaliation, discrimination, and a hostile work environment and requesting punitive damages. Following extensive discovery, the Defendant filed a Motion for Summary Judgment. Plaintiff replied to that Motion conceding his claim of discrimination. He continued to assert his claims of retaliation and hostile work environment and for punitive damages. This Court dismissed the Plaintiff's claim of hostile work environment and confirmed the Plaintiff was not entitled to punitive damages because punitive damages are not recoverable against a municipality. . . . Although the Plaintiff's claim was limited in scope, he continued to attempt to broaden his proof, seeking to have 'mini-trials' on the alleged similarly situated employees. Although the Court in its discretion ultimately limited the proof at trial to prevent such "mini-trials," the Defendant was still required to prepare for such proof and expend resources for that purpose.
>
> Furthermore, although final witness and exhibit lists were filed on July 29, 2011, the Plaintiff submitted a new exhibit list on August 11, 2011, six days before trial, which included 23 documents not previously included on its exhibit list filed

---

[2] Although Wilson-Simmons was decided in the context of a request for fees under 42 U.S.C. § 1988, the Sixth Circuit has repeatedly held that "Congress intended that the standards for awarding fees under section 1988 should be the same as those under Title VII and other acts allowing awards of attorney's fees." Wolfe v. Perry, 412 F.3d 707, 720 n.5 (6th Cir. 2005).

4

on July 29, 2011.

(Docket No. 134 at 5).

None of the foregoing warrants the imposition of attorney's fees against Plaintiff in this case. This is not a case where Plaintiff brought wholly baseless claims, or continued to pursue those claims once it became apparent that the claims were baseless. If Plaintiff's discrimination, hostile work environment, and punitive damages claims were truly "frivolous, unreasonable, or without foundation," Christiansburg Garment, 434 U.S. at 421, as Defendants claim, it would seem that Defendant should not have had to spend almost twenty pages discussing those claims, as it did in the Memorandum in support of its Motion for Summary Judgment. (See, Docket No. 39 at 28-48). Moreover, Plaintiff specifically withdrew his discrimination claim in response to Defendant's Motion for Summary Judgment (Docket No. 50 at 3), and he raised plausible, albeit unsuccessful arguments, in relation to his hostile work environment and punitive damages claims. See, Wilson-Simmons, 207 F.3d at 823 (citation omitted) ("'a district court must resist the urge to engage in *post hoc* reasoning and the hindsight logic of concluding a suit is without foundation because the plaintiff ultimately does not prevail'").

As for Defendant's claim that Plaintiff "continued to attempt to broaden his proof, seeking to have 'mini-trials' on the alleged similarly situated employees," the short answer is that Plaintiff sought to call those individuals in relation to his remaining retaliation claim. If anything, Plaintiff's counsel was zealously representing his client in attempting to convince the Court that those witnesses should be allowed to testify.

Finally, with regard to the 23 documents which were newly added to Plaintiff's witness list on the eve of trial, as the Court pointed out at the beginning of trial, there was a "flurry" of filings

5

"in the last few days," and "within the last few hours even," and the witness and exhibit lists appeared to "have been fluid documents" (Tr. Trans., Docket No. 143 at 3-4). Even defense counsel conceded "I do think there was fluidity after the deadline with new exhibits," and that the "new exhibits" were "a part of that fluidity that we tried to account for." (Id at 82 & 84). The parties disputed who was responsible for the late-identified exhibits, but, ultimately, that is of no moment. Defendant does not claim the late identification of trial exhibits affected its ability to present a defense, and it has not shown "the most egregious circumstances" that are necessary for an award of attorney's fees "to defense counsel in Title VII actions." Gettings v. Bldg. Labors Local 310, 349 F.3d 300, 310 (6th Cir. 2003).

Defendant's request for an award of attorney's fees will be denied.

## B. Plaintiff's Renewed Motion for Judgment as a Matter of Law or for a New Trial[3]

### 1. Renewed Motion for Judgment as a Matter of Law

"[A] renewed motion for judgment as a matter of law . . . 'may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.'" Arnold v. Wilder, ___ F.3d ___, ___, 2011 WL 4056664 at *6 (Sept. 4, 2011) (citation omitted). "In entertaining a motion for judgment as a matter of law, the court is to review all evidence and draw all reasonable inferences in the light most favorable to the non-moving party,

---

[3] In this Motion, Plaintiff also "requests leave to amend or supplement" the Motion "if necessary, upon receipt of the trial transcript." (Docket No. 137 at 2). To the extent this is construed as a formal motion, the request is denied. The Federal Rules of Civil Procedure require that motions for new trials and to alter/or amend judgment be filed within 28 days of the entry of judgment. Fed. R. Civ. P. 59(b) & (e). Plaintiff's contingent, open-ended request runs counter to those time limits, and it would be prejudicial to allow Plaintiff to amplify his arguments when Defendant has filed a comprehensive 25-page response to the arguments which have already been made. Further, Defendant filed a specific response (Docket No. 141) objecting to any further supplementation of Plaintiff's Motion, and Plaintiff filed no reply to the argument that Defendant would be prejudice by supplemental arguments.

6

without making credibility determinations or weighing the evidence." Jackson v. FedEx Corp. Serv.'s, Inc., 518 F.3d 388, 392 (6th Cir. 2008) (citing, Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150–51(2000)). "'In other words, the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate 'whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ.'" Id. (quoting, Jackson v. Quantex Corp., 191 F.3d 647, 657 (6th Cir. 1999)).

Plaintiff sets forth no arguments which would suggest that he met the high bar for judgment as a matter of law, nor could he reasonably make such an argument given the evidence which was introduced at trial.

The central issue at trial was the reason for Plaintiff's termination, and Plaintiff's position was that he was fired from his long-term employment in retaliation for his wife's (Patty Morris's) participation in protected activities under Title VII. He introduced evidence which showed that, not only had Patty Morris filed EEOC charges and a lawsuit, she had filed an EEOC claim within five months of Plaintiff's termination. See, Clay v. United Parcel Serv., Inc., 501 F.3d 695, 718 (6th Cir. 2007) ("When coupled with evidence of retaliatory conduct, . . . temporal proximity may establish a causal connection between protected activity and an adverse employment action"); Nguyen v. City of Cleveland, 229 F.3d 559, 567 (6th Cir. 2000) (causal link may be inferred if adverse action occurs within six months of protected activity). Plaintiff also introduced evidence from which a jury could conclude that other police officers who arguably engaged in comparable or worse conduct were treated less harshly.

On the other hand, Defendant's position was that Plaintiff was terminated because he

admittedly participated in a "self-assigned" investigation[4] which was in violation of departmental policy. At trial, Chief Al Ansley ("Chief Ansley") testified that, in his view, Plaintiff's misconduct was serious, affected the morale of the department, and was the reason for Plaintiff's termination. Chief Ansley also explained the reasons he disciplined other officer's differently, including officers who Plaintiff claimed were similarly situated.

Jurors act "as the sole finder of fact in a jury trial," United States v. Graham, 622 F.3d 445, 449 (6th Cir. 2010) (citation omitted), and "witness credibility is solely within the jury's province[.]'" Lee v. Metro. Gov't of Nashville and Davidson County, 2011 WL 2882227 at *10 (6th Cir. 2011) (citation omitted). Moreover, unless testimony is inherently unbelievable, the jury may accept one witness's testimony and reject conflicting testimony. Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 879 (6th Cir. 2001) (JMOL not warranted where jury could weigh conflicting testimony "and choose to believe one witness's testimony over the other" because court is "not permitted to engage in such a weighing process"); Robinson v. Quick, 1989 WL 49639 at *4 (6th Cir. May 15, 1989) (new trial unwarranted where "[e]ssentially, the jury was confronted with two conflicting interpretations of the facts underlying [plaintiff's] claim and found the defendants' version more persuasive").

If for no other reason, judgment as a matter of law is (and was) unwarranted in light of Chief Ansley's testimony. Chief Ansley was the ultimate decision-maker regarding Plaintiff's termination, as well as the decision-maker regard fellow police officers who Plaintiff claims were similarly simulated, but received more favorable treatment. If the jury believed Chief Ansley's testimony that

---

[4] The self-assigned investigation involved Plaintiff taking pictures of patrol cars at a city council meeting. Plaintiff took the pictures because he believed that the drivers of the vehicles were in violation of the city's take home policy relating to police cars. Plaintiff testified that he did not intend to turn the pictures over to his superiors unless and until he got into trouble.

8

Patty Morris's protected activity had nothing to do with his decision to fire Plaintiff, then the jury could (and did) find in Defendant's favor.[5] Plaintiff's renewed Motion for Judgment as a Matter of Law will be denied.

### 2. Motion for a New Trial

Rule 59 of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The Sixth Circuit has "interpreted Rule 59 to mean that a new trial is required only when 'a jury has reached a seriously erroneous result as evidenced by [ ](1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'" Jones v. Nissan N. Am., Inc., 2011 WL 3701785 at *7 (6th Cir. Aug, 18, 2011) (bracket in original) (quoting, Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 405 (6th Cir. 2006)). Whether to grant a new trial is within the discretion of the trial judge. Gaperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996).

Plaintiff argues that a new trial is warranted in this case because the Court committed clear legal error in several respects. These alleged errors included (a) refusing to allow Plaintiff to call certain witnesses; (b) limiting Plaintiff's offer of proof; and (c) failing to give a "direct evidence" instruction. Plaintiff also asserts that a new trial is warranted because the jury's verdict was against the weight of the evidence.

### a. Limitation on Calling Witnesses

---

[5] "It is true that courts need not blindly accept implausible stories swallowed by jurors," and "'[w]here testimony is patently incredible or defies physical realities, it may be rejected by the court, despite the jury's evaluation.'" United States v. Caraway, 411 F.3d 679, 683 (6th Cir. 2005) (citation omitted). Chief Ansley's testimony was not patently incredible, nor did he weave an implausible story.

9

Plaintiff argues the Court improperly excluded Ron Knight, Phillip Dale Ward, Brian Tenry, Alan Altman, Kenny Austion, Jeff Denault, Christopher MacMillan, and Ivan Szczerbiak from testifying at trial. Most of those witnesses would purportedly testify as to the discipline and/or retaliatory treatment they received (or witnessed) while employees of the Clarksville Police Department.

During the course of the trial, this Court throughly discussed with counsel the testimony those witnesses would allegedly add, and explained the basis for its rulings in relation to not allowing Plaintiff to call those witnesses (see e.g., Docket No. 143 Tr. Trans. at 98-118 & 140-143). It suffices for present purposes to note that the Court was concerned with conducting what would amount to mini-trials in relation to whether the discipline in any given case was warranted, and concerned about admitting irrelevant evidence. The Court believes its rulings on limiting Plaintiff's ability to call certain witnesses was correct, and, rather than merely restating those reasons, the Court addresses the specific arguments raised by Plaintiff in his present Motion.

Plaintiff claims that evidence regarding how purportedly similarly situated employees were treated is "background evidence" which "invite[s] comparison between an employer's treatment of the plaintiff and the employer's treatment of others like him." (Docket No. 138 at 3). No doubt, one way for Plaintiff to show he was terminated because of his wife's participation in protected activity (and not because he conducted a self-assigned investigation) would be for him to point to others who engaged in similar (or worse) misconduct, but were not fired. However, this does not give Plaintiff *carte blanche* to introduce any and all types of evidence which might pertain to the treatment others received. Rather, Plaintiff was entitled to have the jury adequately informed of the reasons for which discipline was imposed so that they could make a determination as to whether

10

Plaintiff was treated more harshly.

Again, the key question at trial was why Chief Ansley decided to terminate Plaintiff's employment. In this case, the jury was throughly informed about the basis for his decisions because the respective employee's Public Integrity Unit ("PIU") files were introduced, and those files contained the underlying background information relating to the misconduct. That a witness may have been able to place a favorable gloss on his conduct is irrelevant because the issue centered on what Chief Ansley knew and that information was contained in the PIU files. Further, the Chief was thoroughly questioned about the reasons for the discipline imposed.

In this regard, Plaintiff's reliance upon cases like Estes v. Dick Smith Ford, 856 F.2d 1097, 1103 (8th Cir. 1988), and Douglas v. Eaton Corp., 956 F.3d 1339 (6th Cir. 1992) is misplaced.

Estes, a disparate treatment case, involved the "blanket evidentiary exclusion" of "background evidence" concerning the makeup of defendant's workforce – evidence which showed defendant "had not hired a single black person among the 153 employees hired from 1978 to 1983, and that only four of the 214 people employed [by defendant] during this period were black." Estes, 856 F.2d at 1103. Here, of course, there was no such "blanket evidentiary exclusion," as Plaintiff was able to present his similarly situated employee evidence, albeit not in the fashion that he desired.

Douglas involved the grant of a new trial, after the trial judge ruled that he had improperly admitted evidence about altercations at defendant's plant. In reversing the decision granting a new trial, the Sixth Circuit held the trial judge erred in concluding that "evidence of past occurrences of fighting at [defendant's plant] were irrelevant because they were not comparable to the present case." Douglass, 956 F.2d at 1344. Such error did not occur here. To the contrary, this Court denied summary judgment on Plaintiff's retaliation claim primarily because Plaintiff pointed to what

11

he considered to be similarly situated individuals receiving more favorable treatment,[6] and the jury was fully informed about those individuals and the circumstances surrounding their discipline through both the PIU files and Chief Ansley's testimony.

Finally, Plaintiff asserts that "[e]ach of the eight individuals ... would have offered unique testimony" and "would have told the jury their personal stories of discipline as employees of the Defendant or what they observed in the ways the Employer disciplined various employees." (Docket No. 138 at 6). Contrary to Plaintiff's assertion, this Court did not "'keep out probative evidence because of crabbed notions of relevance.'" (Id. at 5, quoting, Robinson v. Runyon, 149 F.3d 507, 512 (6th Cir. 1998)). The Court allowed the probative evidence into the record, and simply marshaled how the evidence would be presented to the jury, with appropriate concern that irrelevant, cumulative and/or evidence that would be a "waste of time" within the meaning of Fed. R. Evid. 402 and 403 not be presented to the jury.

### b. Limiting Offer of Proof

Plaintiff next argues that the Court erred in denying his "request to call the excluded witnesses to testify before the Court outside the presence of the jury as his offer of proof," and that, while Plaintiff was willing and able to call the witnesses to make his offer of proof, "the Court improperly limited the Plaintiff to Counsel's oral summary of the proof he sought to introduce." (Docket No. 137 at 2). Plaintiff's assertions are wholly belied by the record.

During the morning session of the first day of trial and, after the Court ruled that certain

---

[6] See, Docket No. 68 at 8-10 for the Court's discussion of the similarly situated issue based on the summary judgment filings. As it turns out, at least two of the witnesses Plaintiff wanted to call at trial were not similarly situated: Brian Tenry and Kenny Austion were disciplined by a former chief under a different police administration. Further, while Phillip Dale Ward (the head of the Public Integrity Unit) sat in on Plaintiff's pre-termination hearing, neither the proof, nor any formal or informal proffer by Plaintiff, suggested that Ward had any decision making authority, or had input into the decision to terminate Plaintiff.

12

individuals would not be allowed to testify, Plaintiff's counsel, Robert J. Martin (Mr. Martin")

informed the Court:

> MR. MARTIN: Well, just in regard to that, Judge – no disrespect – I just need a time that I can make an offer of proof. Like this individual, I would call him to testify to this.
>
> And I don't know, quite candidly, if I have to put those people on the stand for an offer of proof or not. I need to check that.

(Docket No. 143, Tr. Trans. at 116). At the start of the second day of trial, the Court discussed

Plaintiff's request to make an offer of proof in light of the fact defense counsel indicated that the

relevant witnesses were not in Nashville, and stated:

> THE COURT: . . . But there are other ways to do it. If they're gone and there's no way to get them down here, there are other ways for you to make the offer of proof. You can summarize what they would have said. You can make your offer of proof. As to what form that has to take, there are options. So it would be great if you get him here and he did it out of the presence of the jury; but if that's not possible, you're not limited to that being the only way to get your offer in.

(Docket No. 145, Tr. Trans. at 279). Towards the end of the day, and after Plaintiff's counsel

indicated that he was "done except for the offer of proof," the following exchange occurred:

> THE COURT: Okay. All right. I just didn't want the jury to get frustrated that we're sending them home early. Let's do this: I'm going to send them home. Are you going to do the offers of proof yourself? Summarize what they're going to say? Or are you going to put on the witnesses? We can do it either way.
>
> MR. MARTIN: Under the rules –
>
> THE COURT: If I'm wrong about the rules, then – It's going to get in, but I think you have multiple ways to do it. You can put the witness on out of the hearing of the jury. You can summarize – You don't have to put the witness on. You can tell us, so long as you give enough information for the Court of Appeals to be able to rule on whether or not that information should have gotten in, that evidence should have gotten in and it would have made a difference. But you have options on how you present that. So here's what I'll do. I'll send the jury home.

(Id. Tr. Trans. at 512-514). After the jury was discharged for the day, and counsel was given time

13

to think about how he wanted to proceed in relation to the offer of proof, the following exchange occurred:

> MR. MARTIN: And what I would like to do, Judge, with regard to the offer of proof -- and bearing in mind what the Court said I think the appropriate procedure for that is to put the people actually on the stand. Now, I've got –
>
> THE COURT: You can do that, but there are two ways to get it in. And, you know, actually, there are some ways, and this may be the case, that as long as there is a record that the Court of Appeals can review, that's going to be sufficient. So, theoretically, you don't even put on an offer of proof.
>
> I'm telling you to go ahead and do that. But that evidence still gets in because you have done it, because it's been clear and we've had so many discussions about it.
>
> But once you decide to do a formal offer of proof, you have two ways to do it. You can put them all on the stand and get the testimony, or you can identify the witness and tell the Court what that person would say if called to the stand. Here's the questions I would ask and here's how they would answer.
>
> You can do it either way.
>
> MR. MARTIN: Okay. The Court saying that, I would just – I'll just tell the Court.

(Id. Tr. Trans. at 514-15). Counsel then made an offer of proof through an avowal.

The record clearly establishes that Plaintiff was given the option of either calling the witnesses to make his offer of proof, or to summarize their anticipated testimony. The Court in no way "limited the Plaintiff to Counsel's oral summary of the proof he sought to introduce," as Plaintiff now claims.

In any event, under Fed. R. Evid. 103(a), "a formal offer of proof is not required," so long as "the substance of the evidence, what it will show, and the grounds for admissibility" is "made known to the court" or is "apparent from the context." United States v. Ganier, 468 F.3d 920, 924 (6th Cir. 2006) (collecting cases). Even without the formal offer of proof in this case, it was clear what the proposed witnesses would allegedly testify to in light of the repeated and extended

14

discussion about the proposed testimony throughout the trial. Additionally, the Court's suggestion that an offer of proof can take the form of a summary was correct. See, United States v. Ballis, 28 F.3d 1399, 1406 (5th Cir. 1994) ("Rule 103(b) leaves the form of offer within the discretion of the trial court"); Strong v. Mercantile Trust Co. N.A., 816 F.3d 429, 432 n. 4 (8th Cir. 1987) (counsel may make an offer of proof "by stating with specificity what he or she anticipates will be the witness' testimony, or, at the trial court's discretion, by putting the witness on the stand, outside the presence of the jury, and eliciting responses in a question and answer format"); 21 C. Wright & K Graham, Federal Practice and Procedure § 5040.3, p. 906 (2005) ("Probably the most common method of making an offer of proof of testimonial evidence is the avowal of counsel – sometimes called an 'attorney offer of proof'").

### c. Failing to Give Direct Evidence Instruction

Plaintiff also claims the Court committed error in failing to give the jury a separate direct evidence instruction. Although he did not tender a proposed direct evidence instruction, at the charge conference, Plaintiff argued such an instruction was appropriate because twice during the lengthy pre-termination hearing, Chief Ansley stated that he had a "problem" with Plaintiff's admission that he was trying to gather information on the Mayor to enhance or further his wife's lawsuit. The Court found this not to be direct evidence of retaliation, stating that it was "not clear enough." (Docket No. 146 at 602). In further explanation, the Court stated that "it becomes questionable as to what he [Chief Ansley"] meant by that," and "there are arguments either way on what he meant by that and how that was to be interpreted." (Id. at 584).

The Sixth Circuit "has explained that 'direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was a least a motivating factor in the

15

employer's action." Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003) (citation omitted). In the context of a retaliation case, "direct evidence requires the drawing of the conclusion that defendant retaliated against the plaintiff." Petit v. Steppingstone Ctr. for the Potentially Gifted, 429 Fed. Appx. 524, 534 (6th Cir. 2011).

"Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." Umani v. Mich. Dept. of Corr., 2011 WL 2882254 at *4 (6th Cir. July 18, 2011). Thus, direct evidence was found to exist in Johnson v. University of Cincinnati, 215 F.3d 561, 577 n. 7 (2000), where a university purportedly said "[w]e already have two black vice presidents. I can't bring in a black provost," but found not to exist in Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003), where a manger expressed "concern about the potentially detrimental effect on business of having an African-American comanager."

In this case, and as the Court stated during trial, Chief Ansley's statements that he had a "problem" with a police officer going around trying to collect ammunition for another's lawsuit is not direct evidence that the Chief decided to terminate Plaintiff because his wife had previously sued the department. This is particularly so since the statements were isolated and made during the course of a lengthy discourse about Plaintiff's performance. See, Umani, 2011 WL 2882254 at *4 ("Isolated and ambiguous comments are insufficient to support a finding of direct discrimination.").

Regardless, while the Court did not give a separate direct evidence instruction, the Court did define direct and circumstantial evidence, instructed the jury that both types of evidence are entitled to the same weight, and instructed the jurors that it was up to them to determine what weight to give the evidence, whether it be direct or circumstantial. (Docket No. 146 Tr. Trans. at 678). More

16

importantly, "once the case was submitted to the trier of fact, . . . the question of whether [Plaintiff's] proof contained direct or circumstantial evidence became irrelevant," because "the jury's task at that point was to simply determine whether or not unlawful discrimination was the real reason for the adverse employment action." Gibson v. City of Louisville, 336 F.3d 511, 514 (6th Cir. 2003). Even though the Court included an instruction which indicated that Plaintiff was seeking to prove his retaliation case using the indirect method of proof,[7] that very same instruction stated that "Plaintiff may prove intentional retaliation through either direct or indirect evidence," that the "direct and circumstantial evidence paths are mutually exclusive," and that "[d]irect evidence would include oral or written statements or conduct showing a retaliatory motivation for defendant's treatment of plaintiff." (Docket No. 146, Tr. Trans. 691). Thus, contrary to Plaintiff's argument, the jury was adequately instructed about direct evidence and, based on the instructions given, could have returned a verdict in favor of Plaintiff if it believed that Chief Ansley solved what he characterized as a "problem" by firing Plaintiff because Patty Morris had filed a lawsuit against the department.

### d. Weight of the Evidence

Finally, Plaintiff claims the jury's verdict was against the weight of the evidence. He does not, however, forward any legal arguments to support this claimed error.

"'In ruling on a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and

---

[7] The Court instructed the jury utilizing the burden-shifting paradigm set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) because that is what both parties requested in their respective proposed jury instructions. (Docket Nos. 70 at 15-23 & 80 at 25, 29 & 46-47). After the jury had been charged, the Court specifically asked counsel: "Does anybody have any objections to the instructions I just read or to how I read them?" (Docket No. 146, Tr. Trans. at 708). In response, counsel for the Plaintiff did not mention anything about a specific direct evidence instruction. Rather, his only comment was: "not to how you read them. Just municipal liability." (Id. at 708-09).

17

set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence.'" Barnes v. City of Cincinnati, 401 F.3d 729, 743 (6th Cir. 2005) (citation omitted). "The purpose of allowing the district court to reexamine the evidence in considering a motion for a new trial is to ensure that the jury did not return a verdict that has little or no basis in the evidence presented at trial." Lee, 2011 WL 2882227 at *10. "But where there was probative evidence presented to the jury that supports the jury's ultimate verdict, it is not within the province of the court to overturn the jury's decision to accept that evidence." Id. "In other words, '[a] verdict is not unreasonable merely because other inferences or conclusions could have been drawn or because other results are more reasonable.'" Id. (quoting Nolan, 589 F.3d 257, 264 (6th Cir. 2009)).

In this case, there was ample, probative evidence to support the jury's verdict. Plaintiff admitted he engaged in activity that could be characterized as a self-investigation, and admitted that he was not going to turn over the photographs unless he needed them in the future for protection. Chief Ansley testified that violating the internal policy on conducting self-assigned investigations was a serious infraction, and that Plaintiff was fired for that reason, not because Patty Morris filed discrimination charges and a lawsuit. His testimony was credible and his testimony, by itself, was sufficient to support the jury's verdict.

Plaintiff's Motion for a New Trial will be denied.

## II. CONCLUSION

On the basis of the foregoing, Defendant's "Motion for Costs and Attorney's Fees" will be denied, except to the extent that it seeks costs, and those costs will be assessed in accordance with the procedures dictated by Local Rule 54.01(a). Plaintiff's "Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial" will be denied.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

19